2022 IL App (1st) 200938-U

Nos. 1-20-0938 & 1-20-0939 (cons.)

Filed February 17, 2022

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except for the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PF EVERGREEN PARK, LLC, an Illinois Limited Liability Company, and EVERGREEN PLAZA HOLDINGS, LLC, an Illinois Limited Liability Company, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | No. 19 CH 1781 (cons. with 19 M1 702056) |
| v. | ) ) | |
| CFLS EVERGREEN, LLC, a Delaware Limited Liability Company, | ) ) | Honorable |
| | ) | Moshe Jacobius |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Subsequent events render moot commercial landlord's appeal from the judgments in consolidated eviction and Chancery actions. Moot issues are not revived by ancillary, reviewable award of attorney fees and costs. Award of attorney fees and costs to the prevailing party affirmed.

¶ 2   CFLS Evergreen, LLC, appeals from adverse judgments in consolidated eviction and

Chancery cases and the circuit court's subsequent award of attorney fees and costs to PF Evergreen

Park LLC and Evergreen Plaza Holdings, LLC, as the "prevailing party" pursuant to a contractual fee-shifting provision. We find that intervening events render this appeal moot and preclude our review of the underlying merits of those judgments. However, the ancillary award of attorney fees and costs is reviewable, and we affirm.[1]

¶ 3                                                    I. BACKGROUND

¶ 4              CFLS Evergreen, LLC ("the Plaza")[2] is the landlord and property manager of a shopping center known as Evergreen Plaza located in Evergreen Park, Illinois. PF Evergreen Park, LLC, along with affiliated entity, Evergreen Plaza Holdings, LLC (collectively "Planet Fitness"), was the owner of a Planet Fitness gym franchise, which operated on certain property ("the gym space") of the shopping center as a tenant of the Plaza. In 2018, Planet Fitness was negotiating a potential sale, along with numerous other Planet Fitness franchises under common ownership, to PLNTF Holdings, LLC ("the Planet Fitness Holding Company"), a company that also owns numerous Planet Fitness gyms. To complete the sale, Planet Fitness needed to obtain an assignable, long-term lease for the gym space with an option to purchase it. Planet Fitness's lease with the Plaza was set to expire on December 1, 2018. As that date approached, Planet Fitness exercised an option to extend the lease for 30 days to provide more time to negotiate an assignable lease with the Plaza in anticipation of a sale to the Planet Fitness Holding Company.

¶ 5              On December 14, 2018, Planet Fitness and the Plaza executed two agreements (collectively, "the Planet Fitness Agreements"). The first was an amendment to the lease, labeled "Third Amendment to Shopping Center Lease" ("Third Amendment"), that provided a 10 ½ year lease term commencing December 31, 2018, with renewal options for up to 20 additional years.

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.
      [2]Since multiple parties' names contain "Evergreen" and are difficult to distinguish, we will use simpler labels for readability.

The Third Amendment stated that the Plaza intended to subdivide land that included the gym space as a separate tax parcel ("the Planet Fitness Tax Parcel") and convey that property to Planet Fitness. The Third Amendment further provided that, following the sale of the Planet Fitness Tax Parcel to Planet Fitness, the Plaza would demolish certain structures, build a new storefront, paint the building, and repair a sidewalk, all to be completed by December 31, 2019. Additionally, Planet Fitness would renovate the interior of the gym space by December 31, 2019.

¶ 6     However, the Third Amendment contained four express "Conditions Precedent." Paragraph 17 provided that "[t]he terms and conditions of this Third Amendment shall be of no force or effect until[:]" (1) Planet Fitness assigns the lease to a designated subsidiary of the Planet Fitness Holding Company, (2) the assignee executes an "Assignment Agreement" to assume the lease, (3) the Planet Fitness Holding Company executes a guarantee of the lease, and (4) the Plaza receives an earnest money deposit pursuant to the parties' separate agreement concerning space adjacent to the gym space.

¶ 7     The second agreement executed on December 14, 2018, was labeled "Shopping Center Lease," which the parties refer to as the "Buy Contract." The Buy Contract[3] leased a 5,500 square foot space, adjacent to the gym space, to Planet Fitness through May 31, 2029, with renewal options for up to 20 additional years—the same term provided in the Third Amendment. Article 17 of the Buy Contract provided terms under which Planet Fitness would purchase the Planet Fitness Tax Parcel from the Plaza for $6.15 million. The Planet Fitness Tax Parcel encompassed the gym space, the adjacent 5,500 square foot space, and adjacent parking lots. Among other provisions, the sale was conditioned upon the completion of Planet Fitness's environmental inspection and the Plaza obtaining a release of a mortgage that encumbered the property. The Buy Contract

---

[3]We adopt the parties' label of "Buy Contract" to distinguish the Shopping Center Lease from the other lease agreements referenced in this order.

contemplated a closing date of June 1, 2019, or 30 days following the subdivision of the Planet Fitness Tax Parcel, whichever occurred later. Just as in the Third Amendment, the Buy Contract called for the Plaza, upon completion of the sale, to demolish certain structures, build a new storefront, paint the building, and repair a sidewalk, all by December 31, 2019.

¶ 8        Additionally, like the Third Amendment, the Buy Contract contained express "Conditions Precedent." Section 16.31 provided that "[t]he terms and conditions of this Lease shall be of no force or effect until[:]" (1) Planet Fitness assigns the lease to a designated subsidiary of the Planet Fitness Holding Company, (2) the assignee executes an "Assignment Agreement" to assume the lease, (3) the Planet Fitness Holding Company executes a guarantee of the lease, (4) another entity, PF Chicago Holdings, LLC,[4] executes a guarantee of the lease, and (5) the Plaza receives an earnest money deposit of $100,000.

¶ 9        Separate from its negotiations with Planet Fitness, during the summer of 2018, the Plaza had discussions with LA Fitness about occupying the gym space upon the expiration of Planet Fitness's lease. The Plaza preferred the prospect of an LA Fitness in Evergreen Plaza as opposed to Planet Fitness. Prior to signing the agreements with Planet Fitness on December 14, talks between the Plaza and LA Fitness stalled over the use of union labor to construct an LA Fitness on the gym space site. On December 20, 2018, LA Fitness contacted the Plaza and indicated it would use union labor and was interested in proceeding. That same day, the Plaza, through its attorney, notified Planet Fitness that it had not received the documents identified in the "conditions precedent" section of the Planet Fitness Agreements executed on December 14 and, therefore, the conditions had not been satisfied. The Plaza also stated that it had "elected to pursue other options for the [gym] space and rescind and revoke the [Planet Fitness Agreements.]" The following day,

_____

[4]The record does not indicate what this entity is or how it relates to the parties.

the Plaza informed LA Fitness that it "need[ed] a day or two to see if we can unwind the direction we were proceeding over the last month." In a later hearing before the circuit court, Daniel Stern, the Plaza's representative, testified that he probably would not have revoked the Third Amendment if he had not heard from LA Fitness on December 20.

¶ 10 After receiving the notice from the Plaza's attorney on December 20, Planet Fitness's owner, Bryan Rishforth, believed the December 14 agreements were still in place and perceived the Plaza's purported repudiation as a negotiating tactic to gain more favorable terms. Planet Fitness paid the Plaza the rent amount due under the Third Amendment for January 2019, not the higher amount that would have been due under the lease in effect prior to December 14. The Plaza accepted the lower rent payment. However, in various communications, the Plaza indicated that Planet Fitness's lease would expire on January 30, 2019—the end date under the prior lease.

¶ 11 On February 1, 2019, the Plaza notified Planet Fitness that it was trespassing and requested that it surrender the gym space. A few days later, February 5, 2019, the Plaza initiated an eviction action against Planet Fitness to gain possession of the gym space (case no. 19 M1 702056).

¶ 12 On February 7, 2019, Planet Fitness attempted to tender an executed assignment, an executed Assignment Agreement from the assignee, and an executed guarantee of the lease from the Planet Fitness Holding Company. Planet Fitness had previously tendered the Plaza the $100,000 earnest money deposit. The Plaza refused to accept the documents from Planet Fitness, citing its prior repudiation, and asserted that the Third Amendment and Buy Contract were not in effect. As a result of the Plaza's repudiation, Planet Fitness was unable to include the Evergreen Park franchise with its sale of multiple other franchises to the Planet Fitness Holding Company.

¶ 13 A few days later, Planet Fitness filed a Chancery action against the Plaza seeking specific performance of the Third Amendment and Buy Contract under theories of breach of contract,

anticipatory repudiation, equitable estoppel, and promissory estoppel (case no. 19 CH 1781). The eviction and Chancery actions were consolidated before the Chancery court.

¶ 14      The consolidated matters proceeded to an evidentiary hearing in June 2019. Originally, the court indicated that the scope of the hearing was to determine which party had an immediate right to possession. That is, the court intended the hearing to be limited to the eviction aspect of the consolidated cases. However, over the two-day hearing, the parties elicited testimony and evidence addressing the issues raised in the Chancery action as well. The court did not limit the parties' presentations or arguments.

¶ 15      On July 11, 2019, the court issued a 46-page written Memorandum Opinion and Order. The court found that the conditions precedent in the Planet Fitness Agreements pertained to the Plaza's obligations to perform, not to the formation of the agreements, and, therefore, the agreements became effective and binding when executed on December 14, 2018. Thus, the court concluded that Planet Fitness had a valid lease, and the Plaza was not entitled to possession of the gym space. The court went on to find that the Plaza's December 20 repudiation breached the Planet Fitness Agreements. In so finding, the court reasoned that, since no specific time was stated in either agreement, the Plaza was required to allow Planet Fitness a reasonable amount of time to fulfill the conditions, and six days was not a reasonable amount of time. The court noted that the Plaza's repudiation was motivated by the renewed prospect of an agreement with LA Fitness, not its stated concerns about delay in securing the documents identified in the "conditions precedent" of the Planet Fitness Agreements. Further, the court reasoned the implied covenant of good faith and fair dealing required the Plaza to afford Planet Fitness more time to satisfy the conditions. In addition to breach of contract, the court found the Plaza's December 20 communications amounted

to anticipatory repudiation, a separate basis to enforce the Planet Fitness Agreements. However, the court rejected Planet Fitness's alternate theories of equitable and promissory estoppel.

¶ 16        Turning to the remedy, the court found that Planet Fitness was entitled to specific performance of the Planet Fitness Agreements. Accordingly, the court found Planet Fitness was required to satisfy the five conditions stated in the Buy Contract (which encompass the four conditions in the Third Amendment) before the Plaza was obligated to perform. However, the Plaza was required to allow Planet Fitness a reasonable amount of time to fulfill the conditions and refrain from any action to hinder or defeat Planet Fitness's ability to do so.

¶ 17        Since the court originally intended to address only the right to possession in the June hearing, but then made findings on the Chancery issues as well in its July 11 order, the court stayed its findings and allowed the parties to submit additional proofs or briefing on the Chancery issues. Neither party submitted any additional material. In a status conference on July 25, 2019, the court indicated it would issue an "authorizing order" on July 31 giving effect to the findings made in its July 11 order. On July 31, 2019, the court reissued its findings and made its orders effective as of that date.

¶ 18        To give a more definite schedule, the court provided 60 days for Planet Fitness to complete the necessary transactions and produce the assignment, assumption, and guarantee documents called for in the conditions of the Planet Fitness Agreements. The court also provided seven days for Planet Fitness to tender the $100,000 earnest money deposit.[5] Since the originally contemplated closing date of June 1, 2019, had already passed, the court extended the timeline to the later of January 31, 2020, or 30 days following the Plaza's completion of the Planet Fitness Tax Parcel subdivision. The court also extended the timeline for completion of the parties' respective

_____

[5]It is unclear from the record what happened to the original $100,000 earnest money deposit that Planet Fitness tendered to the Plaza.

construction and renovation obligations to July 31, 2020. Until such time as the Planet Fitness Tax Parcel sale was completed, the court required Planet Fitness or its assignee to pay rent to the Plaza in the amount set forth in the Third Amendment to the lease. Ultimately, the circuit court granted judgment to Planet Fitness in both the eviction case and the Chancery case, with a remedy of specific performance as set forth in its July 31 order.

¶ 19    Planet Fitness filed a petition for an award of attorney fees and costs in the circuit court on July 30, 2019. The petition cited section 16.18 of the original lease agreement between the Plaza and Planet fitness and section 16.18 of the Buy Contract, both labeled "Collection Fees." The two provisions are identical and provide for recovery of reasonable costs and attorney fees to the "prevailing party" in any litigation commenced by one party against the other.

¶ 20    The Plaza filed a notice of appeal on August 12, 2019, citing Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017) to invoke the appellate court's jurisdiction. The notice of appeal stated the Plaza was taking appeal from the circuit court's July 11 and July 31 orders granting judgment to Planet Fitness in both the eviction and Chancery actions, granting specific performance, and denying the Plaza's motion to dismiss. The Plaza sought either reversal of the circuit court's orders or vacatur with remand for further proceedings.

¶ 21    On October 23, 2019, Planet Fitness filed a motion to dismiss the appeal, arguing that the July 31 order was not a final, appealable order under Rule 303. Planet Fitness asserted that its July 30 petition for attorney fees and costs was still pending in the circuit court. The motion also asserted that the Plaza could have requested the circuit court to add language pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) to the July 31 order—a finding that there was no just reason for delaying enforcement or appeal—but failed to do so. The motion further stated that the Plaza had not requested the circuit court to stay its July 31 order.

¶ 22        The Plaza filed a response to Planet Fitness's motion to dismiss. The Plaza argued that Planet Fitness's petition for attorney fees did not constitute a "posttrial motion directed against the judgment" under Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017). Rather, the Plaza argued the fee petition was collateral to the underlying action. The Plaza also contended that a decision in an eviction action is appealable even when a fee petition remains pending.

¶ 23        A different panel of this court granted Planet Fitness's motion and dismissed the Plaza's appeal, finding the July 31 order lacked the necessary Rule 304(a) finding. *PF Evergreen Park, LLC v. CFLS Evergreen, LLC*, No. 1-19-1651 (unpublished order filed Nov. 4, 2019); see *Dewan v. Ford Motor Co.*, 343 Ill. App. 3d 1062, 1073 (2003) (noting that a party's prior appeal of a dispositive order was dismissed as premature since the notice of appeal was filed while a claim for attorney fees asserted in the complaint was pending and the order lacked a Rule 304(a) finding).

¶ 24        A few weeks before the Plaza's prior appeal was dismissed, the Plaza filed a response in the circuit court opposing Planet Fitness's fee petition. Initially, the Plaza claimed the circuit court lacked jurisdiction to consider the petition due to its pending appeal. Apart from that, the Plaza argued that Planet Fitness was not entitled to an award of attorney fees and costs since Planet Fitness only prevailed on two of the four claims asserted in its Chancery complaint. The Plaza further argued that an award of attorney fees and costs was improper since Planet Fitness's claims sought only declaratory relief. Separately, the Plaza asserted that Planet Fitness had not submitted sufficient evidence in support of its petition. In addition, the Plaza argued that Planet Fitness was seeking fees and costs beyond those contemplated in the relevant provisions of their contracts. For instance, the Plaza averred that Planet Fitness was seeking attorney fees for transactional work separate from the litigation. In so arguing, the Plaza cited the identical section 16.18 "Collection Fees" terms in both the original lease with Planet Fitness and the Buy Contract.

¶ 25        After reviewing Planet Fitness's petition for attorney fees and costs, along with supporting documentation, and the Plaza's response in opposition, the circuit court issued a written ruling on January 13, 2020. The court found that the Buy Contract contained a fee-shifting provision allowing attorney fees and costs to be awarded to the "prevailing party" in any litigation between them. The court cited Illinois appellate authority stating that a party is a "prevailing party" when "successful on any significant issue in the action and achieves some benefit in bringing suit, receives a judgment in [their] favor or by obtaining an affirmative recovery." *Timan v. Ourada*, 2012 IL App (2d) 100834, ¶ 28. The court also cited *Powers v. Rockford Stop-N-Go*, 326 Ill. App. 3d 511, 515 (2001), to assert that "[a] ruling for an opposing party on some issues does not permit a reduction in attorney fees as long as there is only one prevailing party." Applying those principles, the court then found Planet Fitness was the prevailing party since the court had entered judgment in Planet Fitness's favor and Planet Fitness received "affirmative recovery" in both the eviction and Chancery actions. Thus, the court did not accept the Plaza's argument that Planet Fitness had not prevailed on account of not succeeding on two of its four claims.

¶ 26        The court went on to find that Planet Fitness was entitled to the reasonable attorney fees and costs incurred in direct connection with the litigation. However, the court rejected Planet Fitness's request for fees incurred from the law firm that handled ancillary transactions since the transactional work was attenuated from the litigation itself and such fees would have been incurred in the absence of the litigation. The court also disallowed Planet Fitness's claimed costs for its own time expended in the case. Similarly, the court found Planet Fitness could not recover their attorneys' overhead or travel expenses as costs. Apart from these findings, the court stated that it lacked sufficient information to assess the reasonableness of the otherwise allowable attorney fees

since Planet Fitness submitted redacted time entries. Therefore, the court stated it would conduct an *in camera* review of unredacted invoices before determining the amount to be awarded.

¶ 27 While the fee petition was under consideration, the Plaza filed a motion to amend the July 31, 2019, order. In that motion, filed February 12, 2020, the Plaza asserted that it had complied with its obligations under the July 31 order. Specifically, the subdivision of the Planet Fitness Tax Parcel was completed and recorded in May 2019. In August 2019, the Plaza sent Planet Fitness plans for the construction called for in the Planet Fitness Agreements. According to the Plaza, however, Planet Fitness did not respond, nor did Planet Fitness cooperate in moving forward with the lease assignment or sale of the Planet Fitness Tax Parcel. Nevertheless, through negotiations that the Plaza initiated with the Planet Fitness Holding Company, the lease assignment was completed with the Plaza's consent on October 1, 2019. The parties became embroiled in separate litigation stemming from water damage to the gym space resulting from unusually heavy rains in May 2019. Ultimately, as the Plaza reported, the sale of the Planet Fitness Tax Parcel as contemplated in the buy contract did not occur by the court's deadline of January 31, 2020. For those reasons, the Plaza asked the court to modify the July 31 order by declaring the Buy Contract, including the lease of the adjacent 5,500 square foot space, terminated.

¶ 28 Ultimately, on August 3, 2020, the court issued a 29-page written order awarding Planet Fitness $262,650.10 in attorney fees and $20,247.36 in costs, and the court addressed the Plaza's motion to amend the July 31st order. After determining that it had authority to modify the July 31 order and the Plaza's motion was timely, the court vacated those portions of the July 31 order that required the parties to complete the sale, and ensuing construction and renovation obligations, by specified dates. The modification followed from the parties' agreed representation that the sale portion of the Buy Contract was terminated. The court declined, however, to make any findings as

to why the sale was terminated or under what provision of the Buy Contract, reasoning that such matters were beyond the scope of the consolidated cases. The court only vacated the remedies contained in its July 31 order, not its findings on the claims.

¶ 29     On September 2, 2020, the Plaza filed separate, but identical, notices of appeal for the eviction case and the Chancery case (case nos. 1-20-0938 & 1-20-0939). The appeals were consolidated. The notices of appeal indicated the Plaza was appealing the circuit courts orders of July 11, 2019; July 31, 2019; January 13, 2020; and August 3, 2020. On appeal, the Plaza argues the circuit court erred in: (1) finding that the conditions precedent related to performance rather than formation and that the Planet Fitness Agreements were effective upon execution, (2) finding that the Plaza breached the agreements by anticipatory repudiation, and (3) awarding Planet Fitness attorney fees and costs. The Plaza requests that we reverse the judgments in both the eviction and Chancery cases, vacate the award of attorney fees and costs, and remand for further proceedings.

¶ 30                                   II. ANALYSIS

¶ 31     The appellate court is obliged to consider its own jurisdiction even if the parties do not raise the issue. *People v. Hill*, 2021 IL App (1st) 131973-B, ¶ 14. "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004). "An appeal is moot when the issues involved in the trial court no longer exist because intervening events have made it impossible for the reviewing court to grant the complaining party effectual relief." *In re Benny M.*, 2017 IL 120133, ¶ 17. When a decision on the merits would not result in appropriate relief, such a decision will essentially be an advisory opinion. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10.

¶ 32     In this case, the Plaza has represented, both before the circuit court and this court, that the lease for the gym space was assigned to a new tenant on October 1, 2019. Likewise, the Plaza has represented before both courts that the sale of the Planet Fitness Tax Parcel did not occur, and the Buy Contract was terminated. Planet Fitness does not dispute these facts. Nevertheless, the Plaza requests that we reverse the judgments against it in both the eviction and Chancery actions.

¶ 33     A reversal on the merits would not provide effectual relief to the Plaza because intervening events have rendered such relief impossible. As the Plaza has indicated, a new tenant is now in possession of the gym space under an assigned lease. Therefore, a reversal of the judgment in the eviction action, in favor of the Plaza, could not result in the relief the Plaza sought in the eviction— possession of the gym space. Similarly, a reversal of the Chancery action could not provide the Plaza effectual relief because the circuit court vacated its orders obligating the Plaza to perform under the Buy Contract. Consequently, reversal of the judgments will have no real consequence. We will not consider issues where the result will not be affected regardless of how those issues are decided. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). For these reasons, we find that the Plaza's challenges to the circuit court's order of July 31, 2019 (which incorporates the July 11 order)— finding that the Planet Fitness Agreements were effective upon signing and that the Plaza breached the agreements—are moot. Therefore, we lack jurisdiction to review the findings announced in the July 31 order.

¶ 34     There remains, however, the issue of the award of attorney fees and costs. Illinois courts consider a claim for attorney fees ancillary to the primary cause of action, even when the claim for attorney fees is based on a term contained in an instrument at issue in the primary cause of action. See, *e.g.*, *Poilevey v. Spivak*, 368 Ill. App. 3d 412, 415 (2006) (finding that the merger doctrine did not bar an ancillary claim in Illinois for attorney fees based on a note when the plaintiff

previously obtained a default judgment on the note in another state). Thus, litigation of a claim for attorney fees pursuant to a contract term is not necessarily precluded where litigation over the contract itself is barred. *Id.*

¶ 35    As a corollary, this court has also stated that an award of attorney fees does not "rescue" moot issues on appeal. *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 782 (1999). In *Duncan Publishing*, a newsletter publisher sought the production of certain public records from various departments of the City of Chicago pursuant to the Illinois Freedom of Information Act, and the City fully tendered the requested records after the publisher filed suit. *Id.* at 780-82. The circuit court entered summary judgment for the City upon finding that the City had complied with the request and the issues were moot. *Id.* at 782. The appellate court affirmed reasoning that any "controversy over the City's production of documents clearly ceased to exist once the City tendered those documents to [the publisher]." *Id.* The publisher, though, argued that the case was not moot, in part, because he also sought review of the circuit court's denial of his requests for attorney fees and costs. *Id.* The court rejected that proposition, stating that a request for attorney fees is " 'ancillary to the underlying action' [and] does not rescue the moot claims." *Id.* (quoting *GMRI, Inc. v. Equal Employment Opportunity Commission*, 149 F.3d 449, 451 (6th Cir. 1998)). Thus, Duncan Publishing stands for this court's precedent that a justiciable attorney fees issue does not render otherwise moot issues reviewable on appeal.

¶ 36    In accord with *Duncan Publishing*, the United States Supreme Court has stated that an "interest in attorney's fees is *** insufficient to create [a] case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990); see also *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 452 (1st Cir. 2009) ("[A] party's interest in recouping attorney's fees does not create a stake in the outcome sufficient to resuscitate an

otherwise moot controversy."). Applying *Lewis*, federal courts of appeal do not address the merits of moot issues even when an ancillary claim of attorney fees to the prevailing party is predicated on the trial court's resolution of the issues that are moot by the time of appeal. See *J.S. v. Westerly School District*, 910 F.3d 4, 10 (1st Cir. 2018) ("we must turn a blind eye to the merits of the district court's [findings on the underlying claim], and ask only whether the district court's order rendered the [plaintiffs] 'prevailing parties.' "); *Diffenderfer*, 587 F.3d at 452 (reviewing whether plaintiffs were the prevailing party by "looking only to what relief the district court granted and not to whether the case was rightly decided."); *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 805-06 (9th Cir. 2008) (noting "wide agreement by appellate judges that they should not undertake to delve into the details of a district court's resolution of a controversy that has since become moot in order to decide the ancillary question of fees."). In sum, both Illinois and federal precedent show that a party may not bootstrap moot issues into its challenge to a trial court's decision on a request for attorney fees.

¶ 37 The Plaza attempts to do just that in this appeal. As the gym space is leased to a new tenant and the orders to perform on the Buy Contract were vacated, the Plaza's only real interest is attorney fees and costs. To be sure, in addition to the Plaza's appeal from the July 31 order on the underlying merits, the Plaza requests that we reverse the circuit court's subsequent award of attorney fees and costs and remand for further proceedings, including an award of the Plaza's own attorney fees and costs. The Plaza's arguments challenging the court's award of attorney fees and costs are primarily based on its asserted errors in the circuit court's finding that the Planet Fitness Agreements were enforceable. That is, the Plaza maintains that the conditions precedent related to formation, not merely to its obligation to perform, and, therefore, the Plaza did not breach the agreements since the conditions were not satisfied. Based on that reasoning, the Plaza argues the

circuit court should have ruled in its favor, found the Plaza to be the prevailing party instead of Planet Fitness, and awarded the Plaza attorney fees and costs instead of Planet Fitness. In essence, the Plaza argues that it should have prevailed in the underlying actions and, therefore, the Plaza is entitled to an award of attorney fees and costs. Having found the underlying issues to be moot, however, any consideration that the Plaza *should* have prevailed on those issues is purely hypothetical because, as explained, the Plaza cannot actually prevail—obtain effectual relief. The Plaza's appeal seeks to resuscitate the moot issues since the award of attorney fees is predicated on the circuit court's findings on those issues. But, as we explained, this cannot be done. Accordingly, we will not review the moot issues in this case.

¶ 38        Unless an exception to the mootness doctrine clearly applies, a moot appeal must be dismissed. *People v. Dawson*, 2020 IL App (4th) 170872, ¶ 20 (citing *Commonwealth Edison*, 2016 IL 118129, ¶ 21). Exceptions to the mootness doctrine include (1) the public interest exception, (2) the exception for issues capable of repetition yet evading review, and (3) the collateral consequences exception. *In re Alfred H.H.*, 233 Ill. 2d at 355, 358, 361. None of those exceptions apply in this case. Thus, we dismiss this appeal insofar as it challenges the circuit court's findings on the merits, which are now moot. The issue of attorney fees and costs, however, is "ancillary to the underlying action and survives independently." [Internal quotation marks omitted.] *GMRI*, 149 F.3d at 451. Further, our dismissal of the appeal on those issues does "not necessarily disturb [Planet Fitness's] status as a 'prevailing party' for purposes of attorney's fees." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 717 (2011). Accordingly, the sole remaining issue is the appropriateness of the circuit court's award.

¶ 39        We review a circuit court's award of attorney fees and costs under an abuse of discretion standard. *Cavitt v. Repel*, 2015 IL App (1st) 133382, ¶ 58. An abuse of discretion occurs only when

a ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. *Bovay v. Sears, Roebuck and Co.*, 2013 IL App (1st) 120789, ¶ 26.

¶ 40        On appeal, the Plaza's sole challenge to the appropriateness of the award is that the circuit court allowed Planet Fitness to submit additional supporting evidence after initially finding in its January 13, 2020, order that Planet Fitness's previously submitted evidence was insufficient. A court may, on its own initiative, allow a party to provide additional proof. *AL. P. v. Angel P.*, 2017 IL App (4th) 170435, ¶ 48. A court's decision to reopen the proofs is within its sound discretion. *Avila v. Chicago Transit Authority*, 2021 IL App (1st) 190636, ¶ 73. Factors to be considered include (1) the existence of an excuse for not introducing the evidence initially, (2) whether the opposing party would be unfairly surprised or prejudiced by the new evidence, and (3) whether the evidence is of the utmost importance to the party's case. *Id*.

¶ 41        Here, the circuit court's January 13, 2020, order indicated that Planet Fitness's evidence was insufficient for the court to assess the reasonableness of attorney fees because of redactions and the lack of more specific descriptions of the work performed in relation to invoices. The record further indicates that the redactions and lack of more detailed work descriptions stemmed from attorney-client privilege concerns. The court's direction to submit unredacted records to be reviewed *in camera* shows the court found that Planet Fitness's attorney-client privilege concern was well-founded and, thus, excused its failure to submit such records earlier. The record does not support that the Plaza was unfairly surprised or prejudiced by allowing Planet Fitness to submit additional evidence. To the contrary, it was to the Plaza's benefit that Planet Fitness submit more evidence so that the court could assess the reasonableness of the requested fees and costs. Indeed, after reviewing the evidence, the court disallowed some of Planet Fitness's requested fees and costs. The original request totaled over $330,000, but the court's total award was nearly $50,000

less. Likewise, the evidence was of the utmost importance for the very purpose of assessing the reasonableness of the requested fees and costs. Thus, we do not find that the circuit court abused its discretion by reopening the proofs in relation to the fee petition. Further, the court did not abuse its discretion in awarding attorney fees and costs to Planet Fitness.

¶ 42                                    III. CONCLUSION

¶ 43        Based on the foregoing, we find that the Plaza's appeal of the judgments in the consolidated eviction and Chancery cases is moot. Accordingly, the appeal, insofar as it challenges those judgments, is dismissed. Separately, we affirm the circuit court's award of attorney fees and costs.

¶ 44        Dismissed in part and affirmed in part.